Western Union Telegraph Company *v.* Bowen-Oglesby Milling Company.

Opinion delivered February 6, 1928.

1. Telegraphs and Telephones — Error in Transmission of Message—Damages.—In an action by a flour milling company against a telegraph company for loss due to the sale of flour pursuant to telegram, for negligence in failing to correctly transmit such telegram, stating the price of a certain brand of flour, plaintiff may recover for loss on other brands, the price

of which was governed by that mentioned, where such loss was the proximate result of the incorrect transmission of the message, and was in contemplation of the parties when the telegram was sent.

2. TELEGRAPHS AND TELEPHONES—DAMAGES FOR INCORRECT TRANSMISSION OF TELEGRAM.—In an action against a telegraph company for negligence in failing to correctly transmit a telegram stating the price of flour, thereby causing loss in sales pursuant thereto, evidence that certain sales resulted in loss of 50 cents per barrel, *held* sufficient to prove damages.

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

*Francis R. Stark, Rose, Hemingway, Cantrell & Loughborough* and *Pryor, Miles & Pryor,* for appellant.

*Roy Gean,* for appellee.

KIRBY, J. This appeal comes from a judgment for damages resulting from the negligence of the appellant in failing to correctly transmit and deliver a telegram.

The appellee, a flour milling company located in Kansas, and buying and milling wheat purchased there, sent to its distributing agency or office, in the city of Fort Smith, which is a distinct business, purchasing for sale from the Kansas corporation flour manufactured by it as though it had no connection therewith, the following telegram from Independence, Kansas:

"Offer Marathon six seventy basis halves Fort Smith."

The message delivered and received in Fort Smith, read:

"Offer Marathon six twenty basis halves Fort Smith."

It was alleged that the Fort Smith office or agency, acting under the telegram, made sales of 873½ barrels of flour at a loss of 50c per barrel, resulting from the negligent transmission of the telegram; that the employees of the defendant at Independence, Kansas, and its Fort Smith agent, knew that plaintiff's quotations on flour were based on Marathon, and that it used such basis for selling its other brands of flour on the basis of Marathon quotations.

The answer denied any injury or damages by carelessness or negligence of the telegraph company; that the milling company made no sales of flour other than the 52½ barrels of Marathon flour, upon which it admitted it was indebted to the milling company in the sum of $26.25, which it tendered in court in satisfaction of plaintiff's claim; denied that its employees at Independence, Kansas, or Fort Smith, Arkansas, ever knew that the plaintiff's quotations on flour were based on Marathon, and that the defendant or its employees knew that plaintiff used Marathon as a basis for selling other grades or brands of flour upon the basis of Marathon quotations; alleged that the use of Marathon as a basis was a trade secret of the plaintiff, and that its employees had no knowledge that the plaintiff would sell Ambassador flour, or B. & O. flour, or any other commodity except Marathon flour, as a result of the telegram; denied that the milling company lost the sum of 50c per barrel on 873½ barrels, or suffered any loss whatever.

The testimony shows that the agents of the telegraph company knew the milling company was engaged in the manufacture of flour at Independence, Kansas, and selling same through its distributing office at Fort Smith, and also that it manufactured different brands other than Marathon, which they understood was a brand or grade of flour.

The manager of the appellee company testified that the message was not received as it had been given to the defendant, and, acting upon it, he sold 873½ barrels of flour at an average loss of 50c per barrel; 365 barrels at $6.70, 356 barrels at $6.70, 52½ barrels at $6.60, and 100 barrels at $6.95; that, in dealing in flour, the company had a basis Marathon for its quotations, and Ambassador flour is always 30c over Marathon, B. & O. brand the same as Marathon, and Heart of Wheat 30c under; the telegram meant that the flour should be sold at $6.70 per barrel, Marathon basis 98's, the cost of manufacture; and that it was sold at an average loss of 50c per barrel, which only included a selling charge of 10c per barrel. Said that

wheat was bought on the sale of flour, and that it was difficult to make 50c per barrel profit on the manufacture of flour.

One of the agents of the telegraph company stated that she understood that Marathon was a particular grade of flour, and had no information that Marathon was a basis on which other grades of flour could be sold.

The court instructed the jury, which returned a verdict for the full amount claimed, and from the judgment thereon the appeal is prosecuted.

Appellant insists for reversal that it is not liable for special damages, the loss on other brands of flour than Marathon, having had no notice whatever from the telegram or otherwise that other brands of flour might be sold thereunder, resulting in a loss from the negligence in failing to deliver the telegram as sent.

It is true that the answer denied that the telegraph company or its agents had any such knowledge or information, but the undisputed testimony shows that its agents knew the appellee company was manufacturing flour at Independence, Kansas, and selling and distributing it from its office in Fort Smith, Arkansas; also some of them knew that Marathon was a particular brand or grade of flour, and that the company manufactured other brands as well. The message itself showed on its face that it was an offer to sell or a direction to offer for sale flour ''Marathon six seventy basis halves Fort Smith,'' and the telegraph company was thereby apprised of the importance of the message, its relation to a business transaction, and that loss would probably result unless the message was correctly transmitted and delivered, and was sufficient, under the circumstances, to render the company liable for the resultant actual damages. 26 R. C. L., p. 605, § 102; p. 602, § 100.

The damages claimed for actual loss on the sale of all the flour are no more than would have resulted from the sale of Marathon alone on the basis quoted in the telegram as negligently transmitted and delivered, and the damages suffered because of such negligence cannot be

said not to have been the proximate result thereof or not in contemplation of the parties when the message was sent.

Neither is there any merit in the contention that no damages were proved, since the undisputed testimony shows that the sales under the quotation in the telegram resulted in a loss of 50c per barrel over the actual cost of manufacture, the sale of the flour being made at a price of 50c below the actual cost, or a reduction of 50c per barrel below the cost of manufacture and sale.

We find no prejudicial error in the record, and the judgment is affirmed.